## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CAROL PUCKETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-CV-578-JED-PJC** |
| | ) | |
| **SPIRIT AEROSYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is defendant Spirit Aerosystems, Inc.'s Motion for Summary Judgment as to Plaintiff Carol Puckett and Brief in Support Thereof (the "Motion") (Doc. 76), which plaintiff has opposed (Doc. 80). For the reasons below, the Court finds that the Motion should be granted.

### I.    Background

The following summary is based upon the evidence, drawn in favor of the plaintiff, as it must be at the summary judgment stage.[1] Defendant Spirit Aerosystems, Inc. ("Spirit") manufactures component parts for the aerospace industry. Plaintiff was hired by defendant as an industrial engineer in 2008. Industrial engineers support Spirit's internal manufacturing operations by maximizing the flow and efficiency of production. An industrial engineer's internal customers are Spirit's operations/manufacturing managers, who are responsible for

---

[1] The Court notes that a majority of plaintiff's objections to defendant's undisputed facts do not comply with the relevant rules. Instead of directly disputing the premises underlying many of defendant's facts, plaintiff asserts that defendant's statement of undisputed facts "ignores" other facts. The Court will consider these facts undisputed for the purposes of defendant's Motion. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); LCvR 56.1(c) ("All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.").

overseeing hourly production employees. Because industrial engineers must frequently communicate with and observe manufacturing operations employees, their shift hours coincide with the hours of manufacturing operations.

Plaintiff received a "full high" performance review rating from her supervisor, Cynthia Isaacson, for the 2008 calendar year. (Doc. 80 at 8, ¶ 2; *id.* at 9, ¶ 4). A "full high" rating is the second-highest out of four possible ratings. (*Id.*). Rajen Shah became plaintiff's supervisor in April 2009. (*Id.* at 9, ¶ 5). In March 2010, plaintiff received a verbal warning from Mr. Shah regarding her attendance. Plaintiff received her first written warning regarding her attendance on April 14, 2010, in an Attendance Disciplinary Memo issued to her by Mr. Shah. That month, plaintiff also received her Salaried Annual Performance Appraisal for the 2009 calendar year, in which she received the lowest overall performance rating. (Doc. 76, Exh. 4-3). Mr. Shah noted in the comments section that plaintiff's excessive time off was caused by sickness and recommended that she take medical leave. (*Id.*). Plaintiff took a medical leave of absence for approximately four weeks from April 2010 through May 2010. (Doc. 80 at 10, ¶ 10).

Plaintiff's comments on her 2009 performance review reflect that she was experiencing health issues due to "harassment from her coworkers," including her team leader, Ken Fitzgerald. (Doc. 80, Exh. 14 at 2; Doc. 80 at 9, ¶ 7). Plaintiff states that Mr. Fitzgerald called plaintiff "stupid," told her that she was not an engineer and that she had no business working there, instructed plaintiff's coworkers not to ask her questions, and refused to give her assignments that would allow her to expand her knowledge as an industrial engineer. (*Id.* at 9, ¶ 7). Plaintiff also alleges that Mr. Fitzgerald did not allow plaintiff to attend meetings. (*Id.*). Plaintiff states that this harassment affected her performance at work because she was unable to sleep and

would therefore arrive late to work and found it difficult to focus.  (*Id.*).  Plaintiff stopped working with Mr. Fitzgerald in May 2010.  (Doc. 76 at 12, ¶ 31).

Plaintiff again received the lowest overall performance rating for the 2010 calendar year. (Doc. 76 at 4, ¶ 6).  On her 2010 review, Mr. Shah commented that plaintiff had a "high rate of absenteesm [sic] due to illness" and failed to complete her assignments. (*Id.*, Exh. 4-4).

In February 2011, plaintiff began reporting to Paul Wright, her coworker, as her first level manager.  Mr. Wright reported to Mr. Shah.  Shortly after becoming plaintiff's supervisor, Mr. Wright observed plaintiff's pattern of tardiness and absences and began documenting plaintiff's attendance on a spreadsheet.  (*Id.* at 4, ¶ 7).  On February 28, 2011, Mr. Wright met with plaintiff to discuss her tardiness and absences.  Plaintiff was told that she was expected to be at work at 7:18 a.m. each day and was reminded that it was important for industrial engineers to be punctual in order to communicate with and support manufacturing operations.  (*Id.* at 4, ¶ 8).  Mr. Wright's spreadsheet demonstrates that plaintiff was tardy 31 times and absent for 12 days from February 28, 2011 through July 7, 2011. (*Id.*, Exh. 3-2).   Mr. Wright received complaints from internal customers regarding issues with plaintiff's work, and also received a request from internal customers to assign another industrial engineer to plaintiff's projects.

Plaintiff met with Mr. Shah, Mr. Wright, and Kaelin Blasel from Human Resources on July 8, 2011.  At that meeting, plaintiff received a Performance Improvement Plan ("PIP"), which identified the following concerns regarding her attendance performance: frequent tardiness, high absenteeism, poor communication when absent, missing deadlines, and failure to satisfy internal customer expectations.  (*Id.* at 5, ¶ 10).   Plaintiff was advised that if she anticipated missing work, she should communicate with her manager within the first hour of her shift.  Plaintiff was informed that she needed to understand her deadlines, prioritize her work,

3

and communicate early if a deadline was at risk.  Plaintiff was also told that she was expected to communicate with customers regarding whether their needs were being satisfied.  (*Id.* at 5, ¶¶ 11-12).  Plaintiff was informed that she would be monitored for the following ninety days and failure to improve her attendance and performance could result in further discipline, including as termination.  (*Id.* at 6, ¶ 14).

Plaintiff received counseling from Spirit's employee assistance program from July through September 2011.  Plaintiff admitted to her counselor that she was aware of the issues with her attendance and performance.  (*Id.* at 6, ¶ 15).

Mr. Wright again met with plaintiff on July 15, 2011 regarding her continued attendance issues. (*Id.* at 6, ¶ 16).   On September 6, 2011, sixty days after plaintiff was placed on the PIP, plaintiff met with Mr. Shah, Mr. Wright, and Ms. Blasel to discuss her progress.  Mr. Wright documented that plaintiff was tardy 27 times and absent twice between July 8, 2011 and September 5, 2011.   Plaintiff was informed at the meeting that she had not shown any improvement in her tardiness, absences, and missed deadlines, and that Mr. Wright was forced to work plaintiff's morning assignments because of her frequent tardiness.  (*Id.* at 7, ¶ 17).

Plaintiff contends that her absences decreased significantly during this period of time, and also that many of her absences until September 2011 were covered by her earned time off ("ETO").  Plaintiff further states that she "regularly made up" her time when she was tardy. Plaintiff also states that her inadequate performance was a result of health problems, harassment by her male team leader, not being permitted to attend meetings or meet with internal customers, and not being assigned projects to expand her knowledge.  (Doc. 80 at 3, ¶¶ 5-6).  Plaintiff also alleges that Don Timms, a male employee in plaintiff's department who worked under her supervisor, was not disciplined for his tardiness.  (Doc. 76 at 10, ¶ 27; Doc. 80 at 7, ¶ 23).

On October 6, 2011, Mr. Shah and Mr. Wright completed a final review of plaintiff's progress on her PIP. They noted that she had been tardy 21 times and absent twice since her September 6, 2011 review. They also reviewed plaintiff's performance on each of her assignments, most of which were late or incomplete. Mr. Wright noted that he was required to remind plaintiff to complete assignments or completed them himself. Further, internal customers continued to request that another industrial engineer work on plaintiff's projects. Based on their review, Mr. Wright and Mr. Shah recommended plaintiff's termination. (Doc. 76 at 7, ¶¶ 18-19).

A Corrective Action Review Board ("CARB"), comprised of Mr. Shah, Mr. Wright, and four Human Resources employees, met on October 14, 2011 to discuss the recommendation that plaintiff be terminated. The CARB recommended that plaintiff be terminated for unacceptable attendance and performance. Plaintiff was terminated that day. (*Id.* at 8, ¶ 20).

Plaintiff testified that she had never heard remarks by Mr. Wright or Mr. Shah regarding an employee's age or gender. (Doc. 76 at 13, ¶ 35). Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 26, 2011. (*Id.* at 8, ¶ 22). Plaintiff later filed this case alleging that Spirit unlawfully discriminated against her on the basis of gender and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*[2]

## II.    Legal Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[2] The Court dismissed plaintiff's intentional infliction of emotional distress claim in its May 9, 2013 Opinion and Order. (Doc. 33).

R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only if it "might affect the outcome of the suit under the governing law . . . ." *Anderson*, 477 U.S. at 248. There is no genuine issue of material fact "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. The district court thus must determine "whether the evidence presents a sufficient disagreement [about that material fact] to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence should be taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

"Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Id.* "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

## III.   Discussion

Spirit argues that it is entitled to summary judgment because plaintiff has failed to establish a prima facie case of both gender and age discrimination. (Doc. 76 at 14). Alternatively, Spirit argues that even if plaintiff can establish a prime facie case of gender and age discrimination, there is insufficient evidence of pretext. (*Id.* at 17). In response, plaintiff contends that she has met her prima facie burden and has also established that Spirit's asserted reason for her termination was pretextual. (Doc. 80).

6

Where there is no direct evidence of discrimination, the Court applies the three-step, burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] Under this framework, plaintiff must first establish a prima facie case that her employment was terminated due to her gender or age.  A plaintiff's burden to make a prima facie showing of discrimination under Title VII is not onerous.  *Bird v. W. Valley City*, 832 F.3d 1188, 1200 (10th Cir. 2016).  Then, the burden of production shifts to defendant "to articulate a legitimate, nondiscriminatory reason" for her termination.  *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).  If defendant satisfies its burden, "then summary judgment is warranted unless [plaintiff] can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual."  *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

However, the *McDonnell Douglas* analysis is not rigid.  "Regardless of whether [courts] analyze the plaintiff's evidence in reference to the prima facie case or the business justification versus pretext inquiry, . . . if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result."  *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 800 n.5 (10th Cir. 2007) (internal citations and quotations omitted)).

### A.  Title VII Discriminatory Discharge Claim

#### 1.  Prima facie case

As to plaintiff's discriminatory discharge claim, both parties have proceeded directly to the burden-shifting analysis, which the Court construes as a concession by plaintiff that she has no direct evidence of gender discrimination.  "[A] prima facie case of discriminatory discharge

---

[3]  The Tenth Circuit has held that the *McDonnell Douglas* framework is applicable to ADEA cases.  *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010).

under Title VII requires plaintiff to demonstrate that she (1) belongs to a protected class; (2) was qualified for her position; (3) was discharged; and (4) her position was not eliminated after her discharge." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1150 (10th Cir. 2008).   However, the Tenth Circuit has emphasized the flexibility of this standard, noting in particular that "the fact a plaintiff's job was or was not eliminated after her discharge is not necessarily conclusive of her prima facie case." *Id.* at 1150-51.  Rather, the "critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Plotke*, 405 F.3d at 1100 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)).[4]   Nonetheless, "only the most baseless of [Title VII] claims fails to satisfy" a plaintiff's prima facie burden.  *Zamora v. Elite Logistics*, Inc., 478 F.3d 1160, 1171 (10th Cir. 2007).

First, there is no dispute that plaintiff, as a woman, is a member of a protected class.  As to the second element, plaintiff may satisfy her burden in any of the following ways: by offering credible evidence that she continued to possess the objective qualifications she held when she was hired; through her own testimony that her work was satisfactory, even when disputed by her employer; or by evidence that she had held her position for a significant period of time. *MacDonald v. E. Wyoming Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991) *abrogated*

---

[4]  The parties cite the Tenth Circuit's more general prima facie case formulation, which requires plaintiff to show that she (1) belongs to a protected class; (2) was qualified for her position; (3) was discharged despite her qualifications; and (4) was terminated "under circumstances which give rise to an inference of unlawful discrimination." *Swackhammer v. Spring/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007).  However, the Tenth Circuit has elicited a preference for the four-factor test cited by this Court above in cases for discriminatory discharge.  *See Kendrick*, 220 F.3d at 1227 n.6 (noting that the "structure and guidance" of the four prong test is more appropriate for discrimination claims that fall under traditional categories, such as hiring or discharge).

*on other grounds by Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995).  Plaintiff has demonstrated that she was performing her job adequately with evidence that she received a very positive performance evaluation in 2008.  (Doc. 80 at 8, ¶ 2; *id.* at 9, ¶ 4).  Plaintiff also worked for Spirit for three years, which supports her argument that she was qualified for her job. *English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1008 (10th Cir. 2001) (length of the plaintiff's employment may be used at the prima facie case stage to show that a plaintiff was qualified for his or her job).   This evidence is sufficient to meet plaintiff's light burden at this stage.

Spirit asserts that plaintiff has failed to establish the second element because of evidence that she was not performing her job satisfactorily.  Specifically, Spirit relies on evidence of plaintiff's low performance ratings in 2009 and 2010, and the fact that she was placed on a PIP due to her tardiness, absences, and performance issues.  (Doc. 76 at 14).   However, the Tenth Circuit has rejected an employer's attempt to use an "employee's failure to meet objective, employer-imposed criteria" to defeat the employee's prima facie case where it is also advanced as one of the legitimate, non-discriminatory reasons to dispel the inference of discrimination raised by an employee at the prima facie stage.  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000).  Doing so "would be tantamount to collapsing the first and second stages of the *McDonnell Douglas* analysis and would deny a plaintiff the opportunity to demonstrate that the defendant's explanation for the adverse employment action is pretextual." *Id.*  Accordingly, Spirit's argument lacks merit.

Next, there is no dispute that plaintiff meets the third element because the evidence clearly demonstrates that she was discharged from employment on October 14, 2011.  The Court declines to address the fourth element, whether plaintiff's job was eliminated, because as

plaintiff properly notes: "where an employer contends the actual reason for termination in a discriminatory firing case is not elimination of the employee's position but, rather, unsatisfactory conduct, the status of the employee's former position after his or her termination is irrelevant." *Plotke*, 405 F.3d at 1100.

Spirit argues, however, that plaintiff cannot establish a prima facie case because she has provided no evidence that she was terminated under circumstances giving rise to an inference of discrimination.  (Doc. 76 at 16).   In order for plaintiff to prevail, she must show "a logical connection between each element of the prima facie case and the inference of discrimination." *Plotke*, 405 F.3d at 1100.   The Tenth Circuit has held that a plaintiff asserting gender discrimination may meet her de minimis prima facie burden in a variety of ways, such as evidence of "'actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus.'"  *Plotke*, 405 F.3d at 1101 (quoting *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996).  Here, plaintiff asserts that the circumstances surrounding her termination infer discrimination, specifically that Mr. Fitzgerald excluded her from meetings, called her stupid, and that she was denied training opportunities but other IE's were not.  (Doc. 80 at 14).

Yet plaintiff has failed to show that any of this alleged treatment was due to the fact that plaintiff is a woman.  In fact, plaintiff testified that she had never heard remarks by her supervisors regarding an employee's gender.  (Doc. 76 at 13, ¶ 35).  *See Tran v. Sonic Indus. Servs., Inc.*, 490 F. App'x 115, 121 (10th Cir. 2012) (unpublished) (affirming summary judgment for employer on discriminatory discharge claim because plaintiff offered no evidence that any individual on the management team who agreed with plaintiff's evaluation harbored bias against women).  At most, even assuming that Mr. Fitzgerald's comment to plaintiff was based on her

gender, plaintiff still fails to demonstrate the requisite nexus between the comment and her termination—that is, the existence of a temporal connection between the remark and termination decision. *See Howard v. Garage Door Group, Inc.*, 136 F. App'x 108, 112 (10th Cir. 2005) (unpublished) (discriminatory comment made after termination decision insufficient nexus). Plaintiff also fails to show that the remarks were made by someone involved in the decision to terminate her. *See Hare v. Denver Merchandise Mart, Inc.*, 255 F. App'x 298 (10th Cir. 2007) (unpublished) (remarks must be made by someone involved in the decision to terminate the plaintiff in order to support an inference of discrimination).

First, it appears that the comment likely occurred in 2009, two years prior to plaintiff's termination, based on the fact that plaintiff mentioned the incident in her comments to her 2009 performance review. As a result, there is no temporal proximity.  Second, there is no evidence in the record suggesting that Mr. Fitzgerald played any role in her termination, as plaintiff acknowledged that she no longer worked with Mr. Fitzgerald in May 2010 and her termination occurred in October 2011.  While it is true that the plaintiff's burden at this first stage is *de minimis*, the Court cannot find that plaintiff has met this light burden, even viewing the facts in a light most favorable to her.  Even if the Court were to assume that plaintiff could meet her prima facie burden, however, summary judgment is proper as discussed more fully below.

### 2.  Pretext

Spirit asserts that it fired plaintiff because of her poor attendance, tardiness, and poor performance.  (Doc. 76 at 17).  Plaintiff does not appear to challenge that Spirit has satisfied its burden to present a legitimate, nondiscriminatory reason for terminating her employment.   (Doc. 80 at 15).   Accordingly, the burden shifts to plaintiff to demonstrate that Spirit's stated reasons for terminating her were pretextual.

"A plaintiff can show pretext by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . .'" *Plotke*, 405 F.3d at 1102 (quoting Morgan, 108 F.3d at 1323).  Typically, a plaintiff makes a showing of pretext in one of three ways:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances, or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

*Kendrick*, 220 F.3d at 1230 (citations omitted).  A plaintiff seeking to demonstrate that the defendant acted contrary to an unwritten policy or company practice usually does so by providing evidence that she was treated differently "from other similarly-situated employees who violated work rules of comparable seriousness."  *Id.*

In assessing whether an employment decision was pretextual, the Court must "examine the facts as they appear *to the person making the decision*." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011) (emphasis in original) (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007)).   The Court's role, however, is not "to ask whether the employer's decision was 'wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs.'" *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (alterations in original) (quoting *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004)). Thus, in order to defeat a motion for summary judgment, a plaintiff must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged

12

action is pretextual—*i.e.*, unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

Here, plaintiff argues that Spirit's proffered reasons for terminating her—absenteeism, tardiness, and poor performance—are pretextual because she was treated differently from her similarly situated coworker, Mr. Timms.  (Doc. 80 at 15).   Specifically, plaintiff asserts that Mr. Timms, a male employee in plaintiff's department who also reported to Mr. Shah, was frequently late to work yet was never disciplined.  (*Id.*).  In response, Spirit disputes that Mr. Timms and plaintiff are similarly situated and provides the affidavit of Mr. Shah, which states that Mr. Timms was a Change Management Analyst and received approval to work a flex schedule on a regular basis due to business needs.  (Doc. 76, Exh. 4, ¶ 20).

The Tenth Circuit has held that employees are considered similarly situated "when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" *PVNF*, 487 F.3d at 801 (quoting *McGowan v. City of Eufala,* 472 F.3d 736, 745 (10th Cir. 2006)). Courts should also compare relevant employment circumstances of the plaintiff and the asserted similarly situated employee, such as their work history and company policies.  *Kendrick*, 220 F.3d at 1232.  However, employees who hold different positions with different job duties will not be found similarly situated.  *See Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1118 (10th Cir. 2005), *overruled on other grounds by Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Even viewing the record favorably to plaintiff, plaintiff cannot demonstrate that she and Mr. Timms were similarly situated.  Specifically, plaintiff cannot overcome the fact that Mr. Timms held a different position, which required him to perform different job duties than

plaintiff, and that he, unlike plaintiff, was allowed to work a flex schedule. While plaintiff's job as an industrial engineer required her to be present at 7:18 a.m. each day to communicate with and support manufacturing operations individuals, Mr. Timms' position involved communicating with customers in different time zones, such as in Boeing's Seattle office. Because of the drastic differences in job duties, plaintiff has failed to show that she and Mr. Timms were subject to the same performance evaluation and discipline standards. *See McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (despite having the same supervisor, plaintiff and employee were not similarly situated because they had different job responsibilities).

Additionally, plaintiff's argument fails because she has provided no evidence that she and Mr. Timms shared a similar disciplinary record. *See Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 718 (10th Cir. 2014) (affirming district court's conclusion that plaintiff and employee were not similarly situated because there was no evidence that the employee was in a comparable position to plaintiff with respect to his disciplinary record).

Finally, even if the Court were to assume that plaintiff and Mr. Timms were similarly situated, plaintiff cannot show that they engaged in conduct of comparable seriousness. "When comparing the relative treatment of similarly situated minority and non-minority employees, the comparison need not be based on identical violations of identical work rules; however, the *violations* must be of comparable seriousness." *Colorado Dept. of Corr.*, 248 F.3d at 1011 (emphasis added). While the undisputed facts show that plaintiff clearly violated her duty to be at work on time, there is no evidence that Mr. Timms was in violation of any work rule, much less the same work rule as plaintiff. [5]

---

[5] Plaintiff contends that Spirit's rationale for allowing Mr. Timms to work a flex schedule is "not believable and should be discredited" (Doc. 80 at 7, ¶ 23), but provides no evidence in support of

In sum, the record in this case indicates that there were substantial differences between plaintiff and Mr. Timm's circumstances.  Because plaintiff has not shown that she was treated differently than a similarly situated employee, she has failed to raise a genuine dispute of material fact as to whether Spirit's reason for terminating her was pretextual.  Accordingly, Spirit is entitled to summary judgment on plaintiff's claim that she was wrongfully terminated based on her gender.

### B.  Title VII Failure to Train Claim

Plaintiff also asserts a claim of gender discrimination under a failure to train theory, alleging that Spirit twice denied her training opportunities.  With respect to this claim, Spirit argues that it is entitled to judgment as a matter of law because plaintiff failed to exhaust her administrative remedies.  (Doc. 76 at 23).  Alternatively, Spirit argues that plaintiff has failed to present any evidence that she was denied training opportunities offered to similarly situated employees.  (*Id.*).  Plaintiff's Response did not address either of Spirit's arguments.

"Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII."  *Jones v. Runyon,* 91 F.3d 1398, 1399 (10th Cir. 1996) (internal quotation marks and citation omitted).  In order to exhaust her administrative remedies, a Title VII plaintiff must file an EEOC charge within 300 days of date of the alleged discriminatory act, or she "lose[s] the ability to recover for it."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *see also* 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d)(1).  For purposes of calculating the applicable statutory time period, a "discriminatory act 'occurred' on the day that it 'happened.'" *Morgan*, 536 U.S. at 110.   The Tenth Circuit has recognized that "'[a] declaration of

---

her argument.  However, the Court need not address plaintiff's contention because it is clear that Mr. Timms and plaintiff were not similarly situated employees.

discrimination need not be issued before the statute of limitations begins to run.'" *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003) (quoting *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558 (10th Cir. 1994)).

Plaintiff's denial of training claim appears to be based upon two separate incidents. Plaintiff first alleges she was denied the opportunity to attend an industrial engineering course in August 2010, and further alleges that she was denied another training opportunity "years before." (Doc. 80 at 16). The record reflects that plaintiff emailed Mr. Shah on August 11, 2010, stating she was "interested in taking the [Industrial Engineering] 101 course, if it is not too late." (Doc. 76, Exh. 4-5). Mr. Shah responded to plaintiff that same day: "I don't think you need it. It is all basic IE stuff." (*Id.*). Plaintiff filed her EEOC charge on October 26, 2011. (Doc. 76, Exh. 6).

The Court concludes that both plaintiff's denial of training claims are time barred. As to plaintiff's first claim, the administrative clock was triggered on August 11, 2010, the date Mr. Shah allegedly denied plaintiff training based on her gender. However, plaintiff filed her charge on October 26, 2011, 441 days after the allegedly discriminatory act. It is thus clear that plaintiff's claim is untimely. It is equally clear that plaintiff's claim based on the alleged denial of training "years before" the August 2010 email is also time-barred. *See Daniels v. United Parcel Service, Inc.*, 701 F.3d 620 (10th Cir. 2012) (affirming district court's finding that denial of training claim was untimely where the action occurred in 2004 or 2005 but plaintiff filed charge in 2008). Summary judgment for Spirit is therefore proper because plaintiff failed to file her denial of training claims with the EEOC before the statutory deadline.

**C. Age Discrimination under the ADEA**

Spirit's Motion argues that plaintiff has failed to set forth a prima facie case of age discrimination under the ADEA, or alternatively, that plaintiff cannot show that Spirit's reasons

for firing her were pretext for age discrimination.  In response, plaintiff argues that summary judgment should be denied because she has offered direct evidence of age discrimination. Plaintiff also argues that if the Court does not find direct evidence of discrimination, she is able to satisfy her burden under the *McDonnell Douglas* framework.  (Doc. 80 at 18-21).

### 1.   Direct evidence of discrimination

As stated previously, a plaintiff alleging discrimination may prove her case by direct or circumstantial evidence.   "Direct evidence is evidence from which the trier of fact may conclude, without inference, that the employment action was undertaken because of the employee's protected status."  *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008) (citations omitted).  Direct evidence requires "proof of an existing policy which itself constitutes discrimination, or oral or written statements on the part of a defendant showing a discriminatory motivation."  *Hall v. U.S. Dep't of Labor, Admin. Review Bd.*, 476 F.3d 847, 854–55 (10th Cir. 2007) (internal quotations and citations omitted).  There must also be a "causal nexus" between the evidence and the plaintiff's discharge.  *Perry v. Woodward*, 199 F.3d 1126, 1134 (10th Cir. 1999).

Plaintiff asserts that two statements made by Spirit employees constitute direct evidence of age discrimination.  (Doc. 80 at 18).  First, plaintiff references the deposition testimony of April Parnell, a former Sourcing Manager at Spirit.  Ms. Parnell states that she attended a department meeting in the last week of October 2011, where she and the other department managers were instructed by their director, Helen Fulton, to cut the headcount of their department by ten percent.  (Doc. 80, Exh. 9, 161:13-18).  Ms. Parnell testified that Ms. Fulton had just come from a director's meeting where all Spirit directors were asked to make the ten

percent reduction by the Christmas holiday.  (*Id.*, 160:10-24).  Specifically, Ms. Fulton told Ms. Parnell and the other managers to "[l]ook at your older employees who have been here the longest and are costing us the most money," and to provide her with a list of names of potential employees within two weeks of the meeting date.  (*Id.*, 162:8-19).  Ms. Fulton indicated that the reductions were to take place before Christmas.  (*Id.*, 161:5-8).  Second, plaintiff provides the deposition testimony of former Spirit Human Resources Manager Denise Hendrickson, who testified that Jeff Black, the Senior Manager of Human Resources,  informed her that he was looking at ways to "cut costs" of their department.  (Doc. 80, Exh. 10, 23:12-16).  Mr. Black stated that hiring newer employees that made less money would allow the company to decrease costs.  (*Id.*, 23:21-25).

The Court concludes that plaintiff's evidence fails to constitute direct evidence of discriminatory discharge primarily because plaintiff cannot demonstrate that either statement was, in any way, related to her termination.  A statement must provide "direct evidence of causation on the employment decision" to terminate the plaintiff.  *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000) (statement by supervisor regarding plaintiff's age was not direct evidence of plaintiff's termination).  The record shows that Ms. Fulton's statement regarding Spirit's newly implemented directive to reduce the headcount across departments was made at a meeting during the last week of October 2011 (Doc. 80, Exh. 9, at 161:21-22), and plaintiff was terminated on October 14, 2011.  To the extent that plaintiff argues this statement is evidence of a discriminatory policy, it is undisputed that Spirit's policy was implemented after plaintiff's termination and thus could not have impacted the decision to terminate her.  *Hall*, 476 F.3d at 854–55 (requiring plaintiff to establish "proof of an *existing* policy" that impacted the employment decision (italics added)).

18

Further, Mr. Black's comments are not direct evidence of discrimination because he explicitly referenced cutting costs in the Human Resources Department, not in plaintiff's department.  *See Perry*, 199 F.3d at 1134 ("In the instant case, there is no direct evidence [plaintiff] was fired as a result of the racially discriminatory hiring barriers which [the employer] allegedly attempted to impose.").  Also fatal to plaintiff's claim is the absence of any evidence that Mr. Black, Ms. Fulton, Ms. Parnell, or Ms. Fulton played a role in plaintiff's termination.  Plaintiff's argument is further undermined by her own admission that she had never heard her supervisors comment on an employee's age.  (Doc. 76 at 13, ¶ 35); *see Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10th Cir. 1995) (no direct evidence where "plaintiffs admitted they had not experienced negative treatment or derogatory remarks based on age before the challenged decisions").  The evidentiary gap between the statements and plaintiff's termination make clear that plaintiff's evidence constitutes "[a]t most . . . circumstantial evidence of discriminatory intent because they 'require the trier of fact to infer that discrimination was a motivating cause of an employment decision.'"  *Stone*, 210 F.3d at 1137 (quoting *E.E.O.C. v. Wiltel, Inc.*, 81 F.3d 1508, 1514 (10th Cir. 1996)).

### 2. *McDonnell Douglas* analysis

Because plaintiff has failed to provide direct evidence of age discrimination, the Court must assess whether plaintiff can survive summary judgment under the *McDonnell Douglas* framework.  A plaintiff asserting an age discrimination claim under the ADEA "must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).  "[A]n employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as

'age was the factor that made a difference.'" *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010) (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010)).

In order to establish a prima facie case of age discrimination, plaintiff must show the following by a preponderance of the evidence: (1) she was within the protected age group, *i.e.*, forty years of age or older; (2) she was qualified for the position; (3) despite her qualifications, she was discharged; and (4) her position was filled by a younger person. *Mattera v. Gambro, Inc.*, 94 F. App'x 725, 728 (10th Cir. 2004) (unpublished) (citing *Munoz v. St. Mary–Corwin Hosp.*, 221 F.3d 1160, 1165 (10th Cir. 2000)).

 Spirit does not dispute that plaintiff has met the first prong, *i.e.*, that she is within the protected age group.  As discussed previously with respect to plaintiff's Title VII discriminatory discharge claim, plaintiff has established the second and third prongs—that she was qualified for her job and was terminated from employment.  Finally, plaintiff has provided evidence that her position was filled by a "substantially younger female" for a short time following her termination.  (Doc. 80 at 6, ¶ 19).  For the purposes of summary judgment, the Court finds that plaintiff has established a prima facie case of age discrimination.

Once again, Spirit advances plaintiff's poor attendance, including tardiness, and poor performance as its legitimate, nondiscriminatory reason for terminating her employment.  (Doc. 76 at 17-18).  Plaintiff does not dispute that Spirit has satisfied its burden.  Thus, the burden shifts back to plaintiff to demonstrate that Spirit's justifications for her termination are pretextual.  *See Plotke*, 405 F.3d at 1099.  Plaintiff argues that she can prove pretext based upon the following evidence in the record: (1) Spirit acted contrary to its disciplinary policy in terminating plaintiff; (2) plaintiff was treated differently than Mr. Timms, her similarly-situated coworker; and (3) the testimony of Ms. Parnell and Ms. Hendrickson demonstrate that Spirit was

20

seeking to eliminate its older workforce during the timeframe of plaintiff's termination.  (Doc. 80 at 20-21).    For the reasons discussed below, this evidence is insufficient for a reasonable factfinder to determine that Spirit's justifications for terminating plaintiff are unworthy of belief.

First, plaintiff asserts that Mr. Wright "failed to follow the disciplinary policy with respect to issuing the Plaintiff a second written warning prior to termination of her employment." (Doc. 80 at 20).  While a plaintiff may prove pretext with evidence "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances," *Kendrick,* 220 F.3d at 1230 (citations omitted), Spirit has provided evidence that Spirit's "Attendance and Punctuality" Policy (Doc. 76, Exh. 3-9) was not the proper policy to use to address plaintiff's employment issues.  The affidavits of Mr. Wright, Mr. Shah, and Ms. Blasdel provide that Mr. Wright and Mr. Shah consulted with Ms.  Blasdel regarding the appropriate action to take to address plaintiff's poor attendance, tardiness, and poor performance. (Doc. 76, Exh. 3 at 2, ¶ 8; Doc. 76, Exh. 4 at 2, ¶ 12; Doc. 76, Exh. 7 at 1¶ 4).  Ms.  Blasdel advised both Mr. Wright and Mr. Shah that a PIP was the appropriate tool because plaintiff had both attendance and performance issues.  (*Id.*).  Mr. Wright also testified that a PIP was the appropriate method to address broader employee issues outside of attendance and absenteeism. (Doc. 80, Exh. 11, 115:6-7).

To the extent that plaintiff argues that Spirit misapplied its own policies in terminating her, the Tenth Circuit has held that the court's role is to "prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments.'"  *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006).  In assessing pretext, "[t]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in

21

good faith upon those beliefs." *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004).  Plaintiff has not set forth any evidence that Spirit's decision to place her on a PIP was anything other than a genuine belief that it was the proper course of action.

Spirit argues that even if the attendance and punctuality policy were applicable to plaintiff's employment issues, she is still unable to establish pretext.  (Doc. 85 at 12).  The Court agrees.  "For an inference of pretext to arise on the basis of a procedural irregularity, we have held that there must be some evidence that the irregularity 'directly and uniquely disadvantaged a minority employee.'"  *Johnson*, 594 F.3d at 1213 (quoting *Randle*, 69 F.3d at 454 n.20).  Mr. Wright testified that under the attendance disciplinary policy, plaintiff would have been terminated on August 1, 2011, if not sooner—over two months prior to her actual termination date.  (Doc. 76, Exh. 3 at 5, ¶ 17).  Because plaintiff has not identified any manner in which she was disadvantaged by Spirit's application of the PIP instead of the attendance and punctuality policy, plaintiff's first argument as to pretext fails.

Second, plaintiff reasserts her argument that Spirit's treatment of Mr. Timms is evidence of pretext because they are similarly situated.  (Doc. 80 at 20).  The Court previously rejected this argument in its discussion of plaintiff's Title VII claim, and because its conclusion applies with equal force to plaintiff's ADEA claim, it will not be repeated here.

Finally, plaintiff argues that the testimony of Ms. Parnell and Ms. Hendrickson establish that plaintiff was terminated under circumstances giving rise to an inference of discrimination, specifically that Spirit department managers were directed to reduce their department headcounts and target older employees first.  (Doc. 80 at 20-21).  The Court already determined that this evidence was insufficient to constitute direct evidence of discrimination based on age.  For

substantially the same reasons as discussed previously, the Court also finds that this evidence cannot serve as pretext.

While "[a]ge-related comments referring directly to the plaintiff can support an inference of age discrimination . . . "'isolated [or] ambiguous comments' may be . . . too abstract to support such an inference. *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000) (quoting *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531(10th Cir. 1994).   An ADEA "plaintiff must demonstrate a nexus exists between the allegedly discriminatory statement and the company's termination decision, and therefore 'that age actually played a role in the defendant's decisionmaking process and had a determinative influence on the outcome.'" *Id.* (quoting *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994).

The record does not show that any of the comments referred directly to plaintiff. Moreover, and as discussed above, the statements in Ms. Parnell's deposition were made subsequent to plaintiff's termination, the statements in Ms. Hendrickson's deposition did not refer to plaintiff's department, and there is simply no evidence in the record that any of the individuals recommended or in any way influenced the decision to terminate plaintiff.  Taken together, these facts clearly establish that plaintiff has not demonstrated the requisite nexus between the allegedly discriminatory comments and Spirit's decision to terminate plaintiff's employment.  *See Cone,* 14 F.3d at 531 ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions."); *see also Howard*, 136 F. App'x at 112 (no prima facie case of age discrimination where allegedly discriminatory comment was made after decision to terminate plaintiff had been reached); *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) (no inference of pretext where plaintiff failed to connect memos detailing policy of alleged age discrimination "in any meaningful way"

to her layoff). Further, plaintiff admits that she never heard remarks by her supervisors, Mr. Wright or Mr. Shah, regarding an employee's age. (Doc. 76 at 13, ¶ 35).

Even viewing the record favorably to plaintiff, there is no evidence to suggest that plaintiff's age had a determinative influence on Spirit's decision to terminate her. As a result, plaintiff has failed to make a sufficient showing that Spirit's nondiscriminatory basis for her termination was pretextual, and that age was the "but-for" cause for her termination. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1237-38 (10th Cir. 2015) ("Ultimately, given the thoroughly speculative nature of [plaintiff's] pretext theories, we are satisfied that the district court correctly found no genuine dispute of material fact as to whether [the employer] truly disciplined and terminated [plaintiff] because of her excessive absenteeism.").[6]

## IV. Conclusion

For the foregoing reasons, defendant Spirit Aerosystems, Inc.'s Motion for Summary Judgment as to Plaintiff Carol Puckett and Brief in Support Thereof (Doc. 76) is **granted** in all respects. As a result, defendant's Motion in Limine to Exclude Certain Evidence and Brief in Support Thereof (Doc. 88) is **moot**. A separate Judgment will be entered.

SO ORDERED this 19th day of July, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[6] Although not raised in plaintiff's briefing as evidence of pretext, plaintiff's Response to Defendant's Statement of Undisputed Facts contains numerous assertions that her absences were covered by Earned Time Off (ETO) and did not justify discipline. (Doc. 80, ¶¶ 4, 6, 9, 10). However, the relevant inquiry is whether Spirit honestly believed the nondiscriminatory reason it gave for firing her: that she failed to improve on her PIP with respect to her attendance, tardiness, and performance. *See Johnson*, 594 F.3d at 1211; *Young*, 468 F.3d at 1250 (stating that "the relevant 'falsity' inquiry is whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue"). Because plaintiff has failed to raise a genuine dispute of material fact as to whether Spirit did not have a good faith belief in its explanation for her termination, this evidence cannot constitute pretext.